IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CRATETECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 14-1419-MLB |
| | ) | |
| STOCKBOX LOGISTICS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MEMORANDUM AND ORDER

This case comes before the court on defendants StockBox Logistics (StockBox) and Your Container Services' (YCS) motion to dismiss for lack of personal jurisdiction. (Doc. 14). The motion is fully briefed and ripe for decision. (Docs. 15, 21, 30). Defendants' motion is denied for the reasons herein.

**I.    Facts**

Plaintiff CrateTech is a Washington corporation with its principal place of business in Washington and also has locations in Wichita, Chicago and North Carolina. CrateTech is a crating and packaging supply company that specializes in the custom packaging of items, including aerospace products. CrateTech is the owner of the trademark CRATETECH. Defendant Daniel McDonald is a resident of Kansas and was employed by CrateTech until August 31, 2014. Defendant Ryan Haskin is a resident of Kansas and a past employee of Logistics Resource, Inc. (LRI).

During McDonald's employment, McDonald signed an Employee Confidentiality Agreement (Agreement) in which he agreed that upon his separation he would not compete with CrateTech for two years. The

Agreement also required McDonald to protect the confidentiality of CrateTech's proprietary business information and not disclose the information without specific authorization from CrateTech.

On March 19, 2014, McDonald and Haskin formed defendant StockBox, a Texas limited liability company. McDonald and Haskin approached CrateTech with the proposition that StockBox enter into a licensing agreement with CrateTech. Under the proposed terms of the licensing agreement, StockBox would buy CrateTech containers to sell to customers in Texas. Ultimately, negotiations failed and a licensing agreement was not executed.

Between March and July 2014, McDonald and Haskin solicited Triumph, CrateTech's customer located in Texas, by email. The email stated that StockBox was formed for CrateTech customers in Texas and that McDonald, as an officer of CrateTech, was responsible for the newly formed entity in Texas.

On July 17, 2014, McDonald and Haskin acquired defendant Your Container Solutions (YCS). YCS is a Texas corporation that produces shipping containers.

Before his termination in August 2014, McDonald allegedly misappropriated CrateTech confidential and trade secret information by taking hard copies of financial data and a CrateTech laptop containing trade secret information. In addition, McDonald allegedly transmitted by email CrateTech's business and financial information, customer lists, product drawings, product cost information, product pricing, employee information and email addresses.

CrateTech filed a complaint against McDonald, Haskin, StockBox and YCS alleging claims of misappropriation of trade secrets, unfair

competition, trademark infringement, conversion, and civil conspiracy.[1]

## II. Analysis

StockBox and YCS move to dismiss the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). It is well established that under a Rule 12(b)(2) motion to dismiss, CrateTech must make a prima facie showing that the court has personal jurisdiction over StockBox and YCS. See Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). The court must accept CrateTech's allegations as true and resolve all factual disputes in its favor notwithstanding contrary positions by StockBox and YCS. Heating and Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc., 935 F. Supp. 1167, 1169 (D. Kan. 1996).

A federal court sitting in diversity applies the law of the forum state. Marcus Food Co. v. Crown Meat Co., Inc., 779 F. Supp. 514, 518 (D. Kan. 1991). Therefore, the court applies Kansas personal jurisdiction rules. To establish personal jurisdiction, CrateTech must show that: 1) the jurisdiction is authorized under Kansas law and 2) the exercise of such jurisdiction would not offend due process. See Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006).

### A. Kansas Long-Arm Statute

The Kansas long-arm statute specifies that a party submits to the jurisdiction of Kansas if the cause of action against it "arises from the doing of any of [eleven particular] acts," including

---

[1] Additionally, CrateTech asserts claims of breach of contract, breach of fiduciary duty and computer fraud against McDonald.

committing a tortious act in the state. K.S.A. 60-308(b). The Tenth Circuit has interpreted the Kansas long-arm statute "to allow jurisdiction to the full extent permitted by due process," such that these two inquiries become duplicative. <u>Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.</u>, 17 F.3d 1302, 1305 (10th Cir. 1994); <u>see also</u> <u>OMI Holdings, Inc. v. Royal Ins. Co. of Can.</u>, 149 F.3d 1086, 1090 (10th Cir. 1998).

This court has recognized that the Kansas long-arm statute provides jurisdiction over a non-resident defendant alleged to have engaged with an in-state actor in a scheme or conspiracy that causes damages within the state. <u>See</u>, <u>e.g.</u>, <u>Dodson Int'l Parts, Inc. v. Altendorf</u>, 181 F. Supp.2d 1248, 1253-54 (D. Kan. 2001); <u>Prof'l Inv. Life Ins. Co., Inc. v. Roussel</u>, 445 F. Supp. 687, 696 (D. Kan. 1978) (acknowledging existence of personal jurisdiction over nonresident co-conspirators in scheme to commit business torts with foreseeable consequences in Kansas). CrateTech alleges that defendants conspired to form and acquire companies so that they could unfairly compete with CrateTech. Further, the complaint alleges that the theft of CrateTech's confidential information which occurred in Kansas was an overt act in furtherance of their conspiracy. Based upon CrateTech's complaint and affidavit, the court concludes that the alleged tortious actions of StockBox and YCS subject them to jurisdiction under the "commission of a tortious act" provision of the Kansas long-arm statute, K.S.A. 60-308(b)(1)(B).

**B. Due Process**

The court next determines whether exercise of personal jurisdiction over StockBox and YCS satisfies constitutional due

process requirements. <u>OMI Holdings, Inc. v. Royal Ins. Co. of Cal.</u>, 148 F.3d 1086, 1090 (10th Cir. 1998); <u>see</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471–72 (1985). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1979).

The requisite minimum contacts may be established under one of two theories: "specific jurisdiction" or "general jurisdiction." CrateTech contends that specific jurisdiction is applicable in this case. Specific jurisdiction, which applies when the suit arises out of or relates to a defendant's contacts with the forum state, calls for a two-step inquiry. <u>Monge v. RG Petro-Machinery (Grp.) Co. Ltd.</u>, 701 F.3d 598, 613 (10th Cir. 2012). First, has CrateTech shown that StockBox and YCS have sufficient minimum contacts with the State? Second, would personal jurisdiction over StockBox and YCS offend "traditional notions of fair play and substantial justice"? The requisite minimum contacts may be established if StockBox and YCS have purposefully availed themselves of the privilege of conducting activities within the forum State, or if they have purposefully directed their activities at the forum state. The "purposefully availed" inquiry is typically employed in contract cases, while the "purposefully directed" inquiry is more often used in tort cases.

<u>Dudnikov v. Chalk & Vermillion Fine Arts, Inc.</u>, 514 F.3d 1063, 1071 (10th Cir. 2008).  A defendant's conduct and connection with the forum must be such that "he should reasonably anticipate being haled into court there."  <u>Monge</u>, 701 F.3d at 613 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)); <u>see</u> <u>also</u> <u>Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.</u>, 703 F.3d 488 (10th Cir. 2012).

    **1.   Purposefully Directed**

In considering whether StockBox and YCS purposefully directed their activities toward Kansas, the court must examine their contacts with Kansas.  <u>OMI Holdings</u>, 149 F.3d at 1092.  StockBox and YCS argue that the actions alleged in the complaint were not purposefully directed at Kansas because CrateTech's principal place of business is in Washington.  (Doc. 15 at 8).  In tort cases, however, courts have utilized the "effects test" of <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482 (1984), in which purposeful direction is established when defendants' intentional actions are "expressly aimed at the forum state" with "knowledge that the brunt of the injury would be felt in the forum state."  <u>Dudnikov</u>, 514 F.3d at 1072.  The "effects test" does not merely determine where a corporation's principal place of business is.

In <u>Far West Capital, Inc. v. Towne</u>, 46 F.3d 1071 (10th Cir. 1995), the Tenth Circuit held that allegations of tortious interference of a forum resident's contractual rights is insufficient to establish personal jurisdiction.  The Tenth Circuit instructed that a court is to determine whether the forum jurisdiction was the "focal point" of the tort and its harm.  <u>Towne</u>, 46 F.3d at 1080.  The fact

-6-

that a corporation may suffer a financial effect where it has its principal place of business is not enough to establish personal jurisdiction. <u>Id.</u> at 1081. CrateTech's principal place of business is in Washington. However, the allegations in the complaint focus on defendants' conduct which occurred in Kansas at CrateTech's branch in Wichita.

In <u>Thermal Components Co. v. Griffith</u>, 98 F. Supp.2d 1224 (D. Kan. 2000), the individual defendants were prior employees of the plaintiff. The complaint alleged that the individual defendants, who were Missouri residents, misappropriated trade secrets during their employment and used that information to interfere and compete with the plaintiff's business in a newly formed Missouri corporation which was also named as a defendant. The court held that all defendants were subject to personal jurisdiction in Kansas. The court reasoned that the use of confidential information by the non-resident defendants subjected them to personal jurisdiction in Kansas because they should have been aware that these acts harmed the plaintiff in Kansas.

The allegations in this case are similar to <u>Thermal Components</u>. The complaint alleges that McDonald stole confidential information, including customer lists, pricing information, product drawings and email lists while he was employed by CrateTech in Kansas. The complaint alleges that defendants, including StockBox and YCS, are utilizing that information in an attempt to compete with CrateTech's Kansas branch. Moreover, that information was allegedly stolen after McDonald formed StockBox and YCS. These allegations are sufficient

to support a finding that StockBox and YCS committed intentional acts[2] which were expressly aimed at Kansas. <u>Dudnikov</u>, 514 F.3d at 1072.

CrateTech's complaint and affidavit also show that StockBox and YCS acted with "knowledge that the brunt of the injury would be felt in the forum state." <u>Dudnikov</u>, 514 F.3d at 1072. The allegations in the complaint state that defendants are utilizing the confidential information to directly compete with CrateTech's Kansas branch. Moreover, CrateTech's affidavit states that StockBox and YCS' use of the confidential information and potential diversion of CrateTech's Wichita customers would result in the loss of business in Kansas and a potential loss of jobs to its Kansas employees. Therefore, it can be reasonably inferred that StockBox and YCS were aware that the use of CrateTech's proprietary information would cause CrateTech harm in Kansas.[3] <u>See</u> <u>Thermal Components</u>, 98 F. Supp.2d at 1230.

## 2.   **Fair Play and Substantial Justice**

The court next inquires whether the exercise of personal

---

[2] CrateTech spends time in its response on each specific claim against defendants and the facts supporting personal jurisdiction on those claims. In deciding whether this court has personal jurisdiction, the court is not required to do a claim by claim analysis. If this court has personal jurisdiction against StockBox and YCS on the basis of the allegations of one claim, i.e. misappropriation of trade secrets, then the court can exercise personal jurisdiction against them for all of the claims alleged in the complaint as the claims arise out of the same facts. <u>See</u> <u>United States v. Botefuhr</u>, 309 F.3d 1263, 1272 (10th Cir. 2002)("[O]nce a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.")

[3] While the court agrees with StockBox and YCS that CrateTech would presumably suffer harm in Washington, there is no authority for the proposition that the harm can <u>only</u> be felt at a corporation's principal place of business.

jurisdiction would "offend traditional notions of fair play and substantial justice." <u>Int'l Shoe</u>, 326 U.S. at 316. Because CrateTech has met the minimum contacts threshold, StockBox and YCS must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Pro Axess, Inc. v. Orlux Distrib.</u>, Inc., 428 F.3d 1270, 1280 (10th Cir. 2005). In making such an inquiry courts traditionally consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

<u>Dudnikov</u>, 514 F.3d at 1080.

StockBox and YCS argue that the first factor weighs in their favor because they are Texas companies. They argue that Kansas would be inconvenient for their witnesses. In light of the fact that their two chief officers are Kansas residents and that they have failed to identify which witnesses would have to make the arduous journey from Texas, the court is not persuaded that litigating this action in Kansas would be burdensome.

The second factor is the interest of the State of Kansas in resolving the dispute. StockBox and YCS argue that Kansas has "little interest in adjudicating this action" because CrateTech is a Washington corporation. (Doc. 15 at 11). The court disagrees. CrateTech has brought allegations of torts which occurred in Kanas, including a violation of the Kansas Uniform Trade Secrets Act. Kansas has an interest in interpreting its own laws. <u>Merriman v. Crompton Corp.</u>, 282 Kan. 433, 474 (2006). The court finds that Kansas has a

substantial interest in the present dispute.

The third factor is CrateTech's interest in convenient and effective relief. The law of the alternate forum and CrateTech's burden in bringing this action in that forum are essential to the inquiry. <u>OMI Holdings</u>, 149 F.3d at 1096-97. Kansas is a more convenient forum for CrateTech to bring this action because CrateTech's claims against Haskin and McDonald, who do not seek dismissal, will be decided here. If the court decides not to assert jurisdiction over StockBox and YCS, CrateTech must either litigate its claims concurrently in Kansas and Texas (or Washington), or delay the adjudication of these claims. Although forcing CrateTech to litigate in Texas poses no foreseeable threat to CrateTech's chance of recovery or its ability to maintain suit, Kansas is clearly the forum that offers CrateTech the most effective and convenient relief.

Next, the court examines whether exercising personal jurisdiction would best further the interstate judicial system's interest in obtaining the efficient resolution of controversies. To evaluate this factor, courts consider the location of witnesses, where the underlying wrong occurred, what substantive law will apply and whether jurisdiction is necessary to prevent piecemeal litigation. <u>See id.</u> This factor weighs in favor of CrateTech as the identified witnesses are in Kansas, the alleged wrong occurred in Kansas and Kansas law will apply. Overall, the court finds that the interests of the interstate system are best served by suit in Kansas.

The fifth factor in the reasonableness determination is the shared interest of the states in furthering fundamental substantive social policies. The court discerns no facts which favor either party

on this issue.

After reviewing all of the relevant factors, the court concludes that exercising personal jurisdiction over StockBox and YCS will not violate traditional notions of fairness and due process.  The court finds that it has personal jurisdiction over StockBox and YCS.

**III. Conclusion**

StockBox and YCS' motion to dismiss is denied.  (Doc. 14).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.


IT IS SO ORDERED.

Dated this   16th   day of April 2015, at Wichita, Kansas.


            s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-11-